UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| DARA JO FONTENOT | * | CIVIL ACTION NO. 10-0662 |
| VERSUS | * | JUDGE DOHERTY |
| COMMISSIONER OF SOCIAL SECURITY | * | MAGISTRATE JUDGE HILL |

### REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Dana Jo Fontenot, born October 7, 1968, filed an application for a period of disability and disability insurance benefits on January 10, 2008, alleging disability as of October 1, 2006, due to degenerative disc disease, migraine headaches, numbness in the right arm, and neck problems.

### FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is not substantial evidence in the record to support the Commissioner's finding that the claimant was not disabled and that this case should be remanded for further proceedings.

In fulfillment of Fed. R. Civ. P. 52, I find that this case should be remanded for further proceedings, based on the following:

**(1) Records from American Legion Hospital dated December 7, 2006 to October 11, 2007**.  On December 7, 2006, claimant complained of fatigue with weight gain and pain.  (Tr. 154-55).  Chest x-rays showed straightening of the thoracic spine with loss of the normal kyphotoic curvature, and no evidence of active cardiopulmonary disease.  (Tr. 154).  Cervical spine x-rays showed no significant pathology.  (Tr. 155).

**(2) Records from Dr. Gary C. Dennis dated October 11, 2007 to January 4, 2008**.  On November 15, 2007, claimant complained of neck and upper extremity pain and right arm pain.  (Tr. 181).  Motor examination revealed 5/5 strength.  (Tr. 182).  Sensation was intact.  Reflexes were symmetrical.

Dr. Dennis' impression was degenerative disc disease at C5-C6 and foraminal stenosis and radiculopathy.  (Tr. 182).  He prescribed a Medrol Dosepak, physical therapy with traction and a soft cervical collar.

On January 4, 2008, claimant reported that the physical therapy did not help her a great deal.  (Tr. 179, 190).  She reported a lot of pain and discomfort, more in the right upper extremity.

On examination, claimant had mild restricted range of neck motion.

Examination revealed a right Phalen's sign.  Motor strength was 4/5 in the right abductor pollicis brevis and opponens pollicis muscles.  All other muscle groups were 5/5.

Dr. Dennis' opinion was a history of cervical radiculopathy with likely right carpal tunnel syndrome.  He recommended an EMG nerve conduction of the right extremity.

On March 13, 2007, claimant complained of migraine headaches with shooting pains to the left side of the head, lower back pain, and neck pain.  (Tr. 160-62).  A CT scan showed sinusitis, but no acute intracranial finding.  (Tr. 162).  X-rays showed mild scoliosis and mild degenerative arthritis involving the mid to lower lumbar spine.  (Tr. 161).  Cervical x-rays showed moderate degenerative disease.  (Tr. 160).

On October 11, 2007, claimant complained of neck pain radiating to the right arm.  (Tr. 165).  An MRI showed degenerative disc disease at C3-4, 4-5, and 5-6 levels with spinal stenosis at C5-6 causing compression of the spinal cord, especially on the right, and probable impingement upon the exiting nerve roots.  (Tr. 166).

**(3) Report from Dr. Benedict E. Idowu dated January 25, 2008**.  Nerve conduction/EMG studies of the upper extremities were normal.  (Tr. 195, 199).

**(4) Records from Baton Rouge General Medical Center dated February 19, 2008 to February 20, 2008**.  On February 19, 2008, claimant complained of severe pain on her entire left side after a motor vehicle accident.  (Tr. 212).  She had a left upper extremity fracture, left acetabular fracture, and significant pain in her lumbar spine.  CT scans of the head and C-spine were normal.  The pelvic CT scan showed a left acetabular fracture and SI joint separation.  (Tr. 209, 214).

**(5) Psychiatric Review Technique from William L. Berzman, Ph.D. dated April 1, 2008**.  Dr. Berzman determined that claimant had no medically determinable impairment.  (Tr. 220).

**(6) Physical Residual Functional Capacity ("RFC") Assessment dated April 1, 2008**.  Medical consultant Rachel Bates found that claimant could lift/carry 20 pounds occasionally and 10 pounds frequently.  (Tr. 235).  She could stand/walk and sit about six hours in an eight-hour workday.  She had unlimited push/pull ability.

**(7) Records from William Knighton Pierremont Health Center dated October 31-31, 2008**.  Claimant's neck pain had progressed significantly over the

prior six months. (Tr. 245, 250). She had attempted conservative treatment with physical therapy, cervical traction, hydrotherapy, and medical management without success. (Tr. 245). On examination, she had diminished right upper extremity strength, evidence of hyperreflexia with 3+ reflexes, and bilateral Hoffmann sign. She had evidence of spinal cord compression at C5-6 which was worse on the right than the left.

On October 30, 2008, Dr. Bharat Guthikonda performed an anterior cervical diskectomy and fusion at C5-6. (Tr. 245, 250). Post-surgery, claimant had no residual arm pain and good strength in all four extremities.

**(8) Claimant's Administrative Hearing Testimony**. At the hearing on March 30, 2009, claimant testified that she lived with her disabled husband and two children, ages 20 and 18. (Tr. 23). She had completed the eighth grade in special education classes. (Tr. 24). She had past work experience as a part-time librarian, housekeeper, babysitter, and fish cleaner. (Tr. 26-29).

Claimant testified that she had stopped working because of neck and arm pain. (Tr. 28). She complained of migraine headaches, and numbness and tingling in her hands, fingers, and right arm. (Tr. 30-31). She said that she took Tylenol because could not afford the prescription for hydrocodone. (Tr. 31).

After having surgery, claimant reported that she was better for about a

month. (Tr. 32). Then, she said that her symptoms returned. She also complained that her right leg started getting numb and giving out on her three times a week. Additionally, she stated that she continued to have headaches once or twice a week. (Tr. 33).

Claimant testified that she was still having constant right arm pain. (Tr. 34-35). She said that she had problems sleeping two nights a week. (Tr. 34). Additionally, she complained that she continued to have numbness, tingling, and pain in her right hand. (Tr. 35).

Regarding activities, claimant testified that she could hardly cook, and had trouble washing her hair and housekeeping. She said that she shopped occasionally with her husband or children. (Tr. 37). She stated that she had never had a driver's license.

As to restrictions, claimant testified that she could sit and stand for 30 minutes. (Tr. 36). She said that she could walk about 30 minutes before she started having a lot of pain.

**(9) Administrative Hearing Testimony of Claimant's Husband, Larry Fontenot**. Claimant's husband testified that he had been married to claimant for 23 years. (Tr. 40). He reported that she did light housework, such as washing

clothes and cooking with assistance. (Tr. 41). He stated that she could not do anything when she had migraine headaches.

Mr. Fontenot said that claimant got migraines two or three times a week, and had to spend those days in bed. (Tr. 42). He reported that she also had problems with her right arm and hand that caused her to drop things. He observed that she became aggravated because of pain.

**(10) Administrative Hearing Testimony of Dr. John Anigbogu, Medical Expert ("ME")**.[1] The medical expert testified that claimant did not meet the listings at 1.04. (Tr. 45). He said that he did not have the records before him regarding claimant's neck surgery. (Tr. 44). He opined that she could be able to do light work with a sit and stand option. (Tr. 45). He reported that her surgery would be consistent with her neck and arm problems. (Tr. 46).

**(11) Administrative Hearing Testimony of Wallace Stanfill, Vocational Expert ("VE")**. The VE described claimant's past work as a library page as light and unskilled; a fish cleaner as medium and unskilled; a childcare attendant as light and semiskilled, and a kitchen helper as medium and unskilled. (Tr. 48). The VE opined that claimant could not perform any of these jobs because they did not offer a sit/stand option as imposed by the ME. As for light unskilled jobs offering

---

[1] Some of this video hearing testimony was inaudible.

a sit/stand option, the VE identified small products assembler, of which there were 145 in the Lake Charles area and 5,500 statewide; electronic worker, of which there were 150 locally and 6,000 statewide, and mail clerk, of which there were 125 locally and 8,900 statewide, reduced to 40% by the alternating sit/stand option.  (Tr. 48-49).

When the ALJ modified the hypothetical to include migraine headaches occurring two to three days a week where claimant would be confined to bed, the VE testified that this degree of absenteeism would not be tolerated in the workplace.  (Tr. 49-50).

**(12) The ALJ's findings are entitled to deference**.  Claimant argues that the ALJ erred: (1) in relying solely on the opinion of a medical expert who did not have the opportunity to review the surgical records, and (2) in completely disregarding her complaints of disabling pain without articulating a reason to do so.  Because I find that the ALJ erred in assessing her residual functional capacity in light of her diagnosis of cervical stenosis, I recommend that this case be **REMANDED** for further proceedings.

Initially, claimant asserts that her injuries met the criteria for disorders of the spine as set forth in § 1.04A of the Social Security listings, which provides as follows:

> 1.04 *Disorders of the spine*: (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.
>
> With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

Claimant argues that the ALJ erred in relying solely on the medical expert's testimony in finding that she did not meet this listing. The transcript of the hearing reflects that much of the medical expert's testimony was inaudible. (Tr. 21-22). Additionally, the ME's testimony that some of the medical records, particularly those pertaining to claimant's neck surgery, were missing. (Tr. 22). Thus, because the evidence before the ME was incomplete, the ALJ erred in relying on that testimony.

The records reflect an MRI dated October 11, 2007, showing that claimant had degenerative disc disease at C3-4, 4-5, and 5-6 levels *with spinal stenosis and foraminal stenosis at C5-6 causing compression of the spinal cord, especially on the right and probable impingement upon the exiting nerve roots*. (Tr. 166).

9

(emphasis added). (Tr. 165-66). This clearly shows that claimant met the first part of the listing at § 1.04, which requires ". . . spinal stenosis, degenerative disc disease . . . resulting in compromise of a nerve root . . . or the spinal cord."

As to the second part of the listing, which requires "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss," the records show that on October 30, 2008, claimant had diminished right upper extremity strength, evidence of hyperreflexia with 3+ reflexes, bilateral Hoffmann sign, and evidence of spinal cord compression at C5-6. (Tr. 250). On October 30, 2008, Dr. Bharat Guthikonda performed an anterior cervical diskectomy and fusion. (Tr. 245, 250).

To prove disability resulting from pain, an individual must establish a medically determinable impairment that is capable of producing pain. *Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir. 1995). Once a medical impairment is established, the subjective complaints of pain must be considered along with the medical evidence in determining the individual's work capacity. *Id*. Disabling pain must be constant, unremitting, wholly unresponsive to therapeutic treatment, and corroborated in part by objective medical testimony. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir.

1991).

In this case, claimant consistently complained of pain, which was unresponsive to physical therapy, cervical traction, hydrotherapy, and medical management. (Tr. 245). The MRI confirmed evidence of a condition which was capable of producing this pain, *i.e.*, degenerative disc disease at C3-4, 4-5, and 5-6 levels with spinal stenosis at C5-6 causing compression of the spinal cord. (Tr. 166). This condition ultimately required neck surgery. Thus, claimant appeared to meet this listing, at least at the time of surgery.

While the records indicate that claimant was diagnosed with cervical stenosis causing spinal cord compression, they do not indicate whether the condition lasted for a continuous period of not less than 12 months as required by the Social Security Regulations (*see* 20 C.F.R. § 1505(a)), or the extent to which claimant was able to perform substantial gainful activity after her neck surgery.

Accordingly, the undersigned recommends that the undersigned recommends that this case be **REMANDED** to the Commissioner for further administrative action pursuant to the fourth sentence of 42 U.S.C. § 405(g). This includes, but does not limit, sending the case to the hearing level with instructions to the Administrative Law Judge to order an updated consultative examination of claimant or an evaluation by claimant's treating physician, specifically as to her

residual functional capacity to perform her past work from the time that she was diagnosed with cervical stenosis. Claimant shall be afforded the opportunity to submit additional evidence and to testify at a supplemental hearing.

Inasmuch as the remand recommended herein falls under sentence four of Section 405(g), any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA). See, *Richard v. Sullivan*, 955 F.2d 354 (5th Cir. 1992) and *Shalala v. Schaefer*, 509 U.S. 292 (1993).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING**

**THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed July 25, 2011, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

14